IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FRANCIS RODGERS,

       Plaintiff,

vs.                                                                                                    No. CIV 03-1208 RHS

JO ANNE B. BARNHART, Commissioner
of Social Security Administration,

       Defendant.

**MEMORANDUM OPINION AND ORDER**

       THIS MATTER comes before the Court upon Plaintiff's Motion to Reverse and Remand Decision of the Commissioner, filed March 24, 2004.[Doc. No.9].  Plaintiff was awarded Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits beginning January 15, 1988 due to a mental impairment. Tr. at 55-56.  In January 2000, the Social Security Administration (SSA) initiated a continuing disability review.  On June 9, 2000,  Plaintiff received a Notice of Disability Cessation from the Commissioner.  Tr. at 71-74.  Plaintiff requested reconsideration of that decision. A hearing was held before a Disability Hearing Officer on November 7, 2000 and subsequently Plaintiff was notified that the cessation would be upheld. Tr. at 99-109.

       Ms. Rodgers requested a hearing before an Administrative Law Judge (ALJ) which was held on March 20, 2002.  Plaintiff alleged that she continued to be disabled  due to osteoarthritis, knee pain, history of a seizure disorder, hypertension, diabetes and depression. Tr. at 38-39, 103, 110.   After conducting an administrative hearing, the ALJ issued an unfavorable decision upholding the cessation of benefits, concluding that the Plaintiff could perform a limited range of light work involving routine and repetitive tasks. Tr. at 19.   Based on testimony from a vocational

expert (VE), the ALJ found that Ms. Rodgers could perform her past job and other jobs that exist in the economy.  Id.  The Appeals Council denied review of the ALJ's decision, thus the ALJ's decision is the final decision of the Commissioner.  Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g).

At the time the Commissioner concluded her disability had ceased, claimant was 44 years old, with a G.E.D.and some college courses.  Tr. at 32.   Her past relevant work was as a switchboard operator and a convenience store clerk.  Tr. at 32-34, 185.

The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence.  Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted).  Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests.  Id. (citation omitted).

Plaintiff raises three issues on appeal.  Ms. Rodgers claims that:  (1) the ALJ's finding that Ms. Rodgers could lift 20 pounds was not supported by the record; (2) the testimony of the vocational expert (VE) does not support the ALJ's decision; and (3) that the ALJ failed to adequately develop the record.

To terminate benefits, the Commissioner must prove (1) that the claimant's medical condition has improved; (2) that the improvement is related to her ability to work; and (3) that she is currently able to engage in substantial gainful activity.  20 C.F.R. § 404.1594(a).  A determination that a medical improvement has occurred must be based on changes or improvements in the symptoms, signs and laboratory findings associated with the claimant's impairment.  20 C.F.R. § 404.1594(b)(1).  A medical improvement is related to a claimant's ability to work if there has been a decrease in the severity of the impairment and increase in the claimant's functional capacity to do basic work activities.  20 C.F.R. § 404.1594(b)(3).

When a claimant was previously found entitled to benefits because she satisfied a Listing, as in this case, the Commissioner meets her burden of proving medical improvement which is related to claimant's ability to work, when she shows that the claimant no longer satisfies that Listing section. See Glenn v. Shalala, 21 F.3d 983, 987 (10th Cir. 1994); 20 C.F.R. § 404.1594(c)(3)(i). Once claimant no longer satisfies the Listing, the Commissioner must show that the claimant can now engage in substantial gainful activity. Id.

Plaintiff initially sought SSDI and SSI benefits beginning January 15, 1988 due to chronic depression, personality disorder, osteoarthritis, hypertension, seizure disorder and obesity. ALJ Richard Smith, who issued a favorable decision on Plaintiff's disability claim in 1995, found that Ms. Rodgers' depression, with intermittent schizoid and suicidal episodes, satisfied the requirements necessary to meet or equal Listing 12.04 (affective disorders). Tr. at 57-58.

Ms. Rodgers' benefits were terminated in June 2000 because the Social Security Administration found that her medical condition had improved. The Commissioner determined that Plaintiff could perform sedentary exertional level work activity that was not too demanding and did not involve much social contact. Ms. Rodgers requested reconsideration of the disability cessation, claiming that her disability continued due to diabetes, vision problems, migraine headaches, depression, and pain. Tr. at 75-82.

A hearing was held before a Disability Hearing Officer (DHO) who concluded that Ms. Rodgers no longer suffered from major depression and consequently did not meet the requirements of Listing 12.04. The DHO determined that Plaintiff had the residual functional capacity to lift ten pounds and found that she was capable of performing sedentary work. The decision noted that although Plaintiff's past relevant work as a switchboard operator is described as sedentary exertional level work, Plaintiff could not return to that job because the job is rarely found in the current national economy due to technological advances. The DHO found, however, that Plaintiff

retained the RFC for a wide range of sedentary work and was therefore not disabled. Tr. at 102-108.

Plaintiff requested a hearing before an ALJ, stating that she continued to have disabling impairments which caused pain which made it impossible for her to work. Tr. at 110-111. After conducting the hearing, ALJ Gary Vanderhoof found that her condition had significantly improved and determined that Plaintiff no longer met or equaled Listing 12.04 as of June 2000. Tr. at 15, 17, 18. Ms. Rodgers' benefits were terminated on August 31, 2000, the end of the second month after the month in which disability ceased, according to SSA regulations. Tr. at 20, 20 C.F.R.§404.594 (f)(8). Plaintiff filed new applications for SSDI and SSI on December 10, 2002. [Doc. No. 8]. A favorable decision on those applications was entered on February 18, 2004. Id. Ms. Rodgers, therefore, received benefits before September 2000 and after December 10, 2002.

At the time of ALJ Smith's 1995 disability decision, Plaintiff had been hospitalized for dythymia (with some psychotic features) eight times. Tr. at 103. A consultative psychiatric examination performed by Dr. Ronald Monteverde on May 4, 2000 noted that Plaintiff was not taking any psychotropic medications at that time and had not been to counseling for three years. Dr. Monteverde stated that Plaintiff's mood and affect were constricted but he found no evidence of a thought disorder. His diagnostic impressions included a "history of major depression which now appears to be remitted,[d]ysthemic disorder," and "[m]ixed personality with avoidant/schizoid-like features." He assigned her a Global Assessment of Functioning (GAF) of 50-55. Tr. at 135-138.[1]

---

[1]The GAF is used to report "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 30 (4th Ed. 1994). The GAF scale defines the range from 41-50 as "serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)." A GAF of 51-60 indicates moderate symptoms (e.g. flat affect and circumstantial speech) or moderate

Non-examining psychologist Leroy Gabaldon, Ph.D., completed a Psychiatric Review Technique form dated May 18, 2000. Dr. Gabaldon opined that Plaintiff was able to "engage in tasks that are demanding of her or activities that do not involve much social interaction." Tr. at 141.

Dr. Sambaiah Kankanala, M.D., performed a consultative physical examination on March 30, 2000. He noted that Plaintiff had undergone seven surgeries on her right knee and one on her left knee. Dr. Kankanala's examination of the right knee found no spasm, no deformity, and no inflammation. He noted the presence of pain, crepitus and minimal effusion in that knee. Dr. Kankanala's examination of the left knee found no deformity, no effusion and no inflammation of that knee. He observed that range of motion caused pain and crepitus in that knee also. His diagnoses were osteoarthritis, seizure disorder, diabetes mellitus, essential hypertension, depression, visual acuity problems and low back pain. Tr. 129-134. The record also includes two pages of office notes from Dr. Kankanala dated July 6, 2000, which reflect that he reviewed Plaintiff's laboratory data with her on that date and discussed management of her hypertension, diabetes and depression. Tr. at 160-161.

Non-examining DDU medical consultants Dr. Edward Bocian, Jr. and Dr. David Green completed a Physical Residual Functional Capacity Assessment of Ms. Rodgers on May 21, 2000 and August 4, 2000. Dr. Green and Dr. Bocian agreed that Plaintiff could occasionally lift ten pounds, that she could occasionally climb, stoop, kneel, crouch, or crawl, that she was required to avoid all exposure to machinery, heights and other hazards and to avoid moderate exposure to extreme cold, heat, wetness and humidity. Tr. at 163, 164, 166.

---

difficulty in social, occupational, or school functioning (e.g. conflicts with co-workers).

Plaintiff also submitted an April 2, 2002 letter from treating physician, William Baggs, M.D. That letter stated that Dr. Baggs considered Ms. Rodgers "disabled from any active employment secondary to bad arthritis in her knees." Tr. at 175.

**First Alleged Error**

Plaintiff contends that the ALJ's finding that Plaintiff could meet the lifting requirements for light work was not supported by the record. Light work requires standing or walking for six hours out of an eight hour workday, lifting no more than twenty pounds at a time, and frequent carrying of objects weighing up to ten pounds at a time. See 20 C.F.R. 1§ 404.1567(b), § 417/078(b).

The examining consultative physician, Dr. Kankanala, did not specifically address lifting restrictions in his report. There are no medical opinions in the record which disagree with the consulting non-examining physicians' assessments that Ms. Rodgers is limited to lifting no more than ten pounds. Plaintiff argues that the ALJ's determination that Plaintiff is capable of lifting more than ten pounds is therefore not supported by substantial evidence.

Defendant contends that the ALJ's finding on this issue is supported by Plaintiff's own testimony. Plaintiff testified that she was raising her one year old grandchild. The ALJ said "so obviously--I assume the heaviest object--I don't want to say object, but the heaviest thing--the most you lift, I assume, would be the child to change the diaper?" Tr at 42-43. Plaintiff's response to that question was inaudible. Tr. at 43. The ALJ then asked how much the child weighed and Plaintiff responded 21 pounds. Id. Defendant argues that it was reasonable, based on Plaintiff's own testimony, for the ALJ to find that Ms. Rodgers was capable of lifting at least 20 pounds.

Contrary to the ALJ's assertion, Plaintiff did not testify that she could lift 20 pounds. The Commissioner's reviewing physicians chose ten pounds as Plaintiff's weight-lifting restriction limit and agreed that Plaintiff should avoid all exposure to machinery, heights and other hazards based

-6-

upon their medical opinions and the record. ALJ Vanderhoof disregarded those medical opinions as well as the opinion of Plaintiff's treating physician on this issue.

The ALJ may not substitute his own opinion for that of a claimant's doctor. See Sisco v. Dep't of Health & Hum. Servs., 10 F.3d 739, 743 (10th Cir. 1993).The [Commissioner] is simply not qualified to analyze bare medical findings in coming to conclusions regarding a claimant's ability to perform work. See Rosado v. Sec'y of Health & Hum. Serv., 807 F.2d 292, 293-94 (1st Cir. 1986). The [Commissioner] cannot substitute her judgment for that of a medical expert by finding that the claimant failed to present evidence that he cannot perform at a certain physical level or RFC. West v. Sullivan, 751 F.Supp. 647, 648 (N.D.Tex. 1990). To do so would be to inappropriately shift the [Commissioner's] burden of proof to the plaintiff. Rosado, 807 F.2d at 293-94. See also Thompson v. Sullivan, 987 F.2d 1482, 1491 (10th Cir. 1993).

The ALJ discussed the report of the consultative physical examination performed by Dr. Kankanala (which did not include a specific assessment of Plaintiff's weight lifting restrictions) and the report of the consultant psychiatric examination performed by Dr. Monteverde which stated that Ms. Rodgers "is probably doing as well physically as she has...during [the] last fifteen years that I have known her." Tr. at 136. These reports do not provide support for the ALJ's specific finding on the physical limitations issue.

The Court finds that ALJ Vanderhoof failed to properly consider and rebut the consulting non-examining doctors' opinions regarding Plaintiff's weight-lifting restrictions and failed to give any weight at all to treating physician Dr. Bagg's opinion that Plaintiff was disabled due to arthritis in her knees. The ALJ's finding that Plaintiff could perform a limited range of light work, which is contradicted by all the medical opinions on that issue in the record, causes the Court to conclude that the ALJ has improperly substituted his judgment for the judgment of both treating and

consulting physicians. The Court thus finds that the ALJ's determination that Plaintiff retained the RFC for light work is an error requiring remand.

**Second Alleged Error**

Plaintiff claims that the ALJ's findings were not supported by substantial evidence because no transcription of the VE's testimony was included in the administrative record. The Commissioner subsequently provided a certified transcript containing the VE's March 20, 2002 testimony. Defendant contends that this argument is now moot. Plaintiff's Reply argues that the supplemental administrative record consisting of the VE's testimony further demonstrates that the decision of the ALJ was not supported by the evidence.

A vocational expert's testimony can provide substantial evidence to support the ALJ's findings only if the hypothetical question presented to the vocational expert adequately reflects the state of the record. Gay v. Sullivan, 986 F.2d 1336, 1341 (10th Cir. 1993); Hargis v. Sullivan, 945 F.2d 1482, 1491 (10th Cir. 1991). "[T]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." Hargis v. Sullivan, 945 F.2d 1482, 1491 (10th Cir. 1991). If a hypothetical question does not reflect all of a claimant's limitations, the expert's testimony as to jobs in the national economy that the claimant can perform has no evidentiary value. See DeLormey v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).

Although it is proper for the ALJ to limit the hypothetical questions to those impairments which are actually supported in the record, Jordan v. Heckler, 835 F.2d 1314, 1316 (10th Cir. 1987), the ALJ's failure to include the physical limitations found by the treating and consulting physicians in the hypothetical questions he posed to the VE was inappropriate in this case. There was sufficient evidence that the limitations identified by the reviewing physicians interfered with

claimant's ability to work and the ALJ should have explained his reasoning for disregarding their opinions on this matter.

**Third Alleged Error**

Plaintiff claims that the ALJ did not fulfill his duty to develop the record because he did not obtain copies of clinical records of Plaintiff's most recent treatment. Plaintiff testified at the hearing that there were medical records which had not been provided to the Commissioner. Tr. at 30. The ALJ told Plaintiff that "you can have the doctor put his treatment records--what he's done--the treatment--in that envelope that's prepaid and then mail it to my office...So prior to departing here today, pick up those envelopes and then you can just have the doctor's office ... put the treatment records in." Id. The only post hearing evidence that was submitted was the April 2, 2002 letter from Dr. Baggs.

"Although a claimant has the burden of providing medical evidence proving disability, the ALJ has a basic duty of inquiry to fully and fairly develop the record as to material issues." Carter v. Chater, 73 F.3d 1019, 1021 (10th Cir. 1996) (citing Baca v. Department of Health & Human Servs., 5 F.3d 476, 479-80 (10th Cir.1993) (citations omitted)). This duty is especially strong in the case of an unrepresented claimant. Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir.1992).

The [Commissioner] must consider all relevant medical evidence of record in reaching a conclusion as to disability. Baker v. Bowen, 886 F.2d 289, 290 (10th Cir. 1989) (citing Ray v. Bowen, 865 F.2d 222, 226 (10th Cir.1989)). An ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing. Carter v. Chater, 73 F.3d 1019, 1021 (10th Cir. 1996).

Although ALJ Vanderhoof informed Plaintiff that she could submit additional medical records for his consideration and even provided postage paid envelopes for her to do so, Plaintiff

failed to submit any additional material with the exception of the letter from Dr. Baggs. Although the ALJ acknowledged that Dr. Baggs, an orthopedic surgeon, had treated Plaintiff for a number of years, Tr. at 16, he gave no weight to that letter because there were no documents or medical records submitted that substantiated the opinion of Dr. Baggs. Tr. at 18. The Commissioner also argues that Dr. Baggs' opinion that Plaintiff was disabled in 2002 is not relevant to her condition in 2000 when her benefits were discontinued.

Ms. Rodgers testified that she had received medical treatment from two physicians, one of whom was Dr. Baggs, during the pertinent time period. In light of Plaintiff's unrepresented status and her history of a severe psychiatric disorder, the Court finds that the ALJ should have independently obtained the treatment records of Dr. Baggs to ascertain the basis for his opinion that Ms. Rodgers was disabled by "bad arthritis" and to determine if Dr. Baggs believed she was disabled in June of 2000 before rejecting that opinion. On remand, the Commissioner is instructed to obtain all relevant medical records.

Plaintiff urges this Court to reverse the ALJ's decision and order the Commissioner to award Plaintiff the benefits she should have received between the date of the decision of ALJ Vanderhoof and the subsequent award of benefits on December 10, 2002. Outright reversal and remand for immediate award of benefits is appropriate when additional fact finding would serve no useful purpose. Harris v. Secretary of Health & Human Serv., 821 F.2d 541, 544-545, (10th Cir.1987).

The Court's holding that the record in this case fails to provide substantial evidence to support the ALJ's conclusion that Ms. Rodgers was capable of performing a limited range of light work does not automatically dictate an award of benefits. As discussed above, there is medical evidence which is not currently part of the record. It is impossible for the Court to determine whether that evidence would provide support to the ALJ's decision in this case. Furthermore, a

determination that Ms. Rodgers was not capable of performing light work in June of 2000 would not preclude the Commissioner from finding that Ms. Rodgers was capable of performing sedentary work, the sole classification requiring less physical exertion than light work, at that time. Remand for additional fact finding is thus required in this case.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse or Remand Decision of the Commissioner, filed March 24, 2004, [Doc. No.9] is **GRANTED**.  On remand, the Commissioner is instructed to obtain all pertinent medical records, to include all functional restrictions supported by the record in hypothetical questions posed to the VE and to reevaluate Plaintiff's RFC determination.

_____*Robert Hayes Scott*_____
ROBERT HAYES SCOTT
UNITED STATES MAGISTRATE JUDGE